Filed 7/11/23  In re S.M. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re S.M., et al., Persons Coming Under the Juvenile Court Law. | B319168, B323847 |
| _____ | (Los Angeles County Super. Ct. No. 19CCJP08020) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| ANTHONY M., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Philip L. Soto, Judge.  Affirmed in part and reversed in part.

Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Tracey Dodds, Deputy County Counsel, for Plaintiff and Respondent.

Anthony M. (Father) appealed from orders declaring his two children to be dependents of the juvenile court under Welfare and Institutions Code section 300, subdivisions (a) and (b)(1),[1] and ordering that the children be removed from his physical custody. Father also challenges a restraining order to the extent that it restrains him from contacting or coming within 100 yards of the children. We agree with Father that there is insufficient evidence to support jurisdiction or removal based on his conduct, and that the restraining order should not include his children.

## FACTUAL AND PROCEDURAL HISTORY

### A. Background

This appeal concerns Father's two children with Brittany S.J. (Mother), S.M. (born July 2019) and A.M. (born October 2020) (the children). Father and Mother were never married to each other. Mother is also the parent of J.T. (born February 2013). Father has known J.T. since he was born, and J.T. refers to him as "Dad."

For some time prior to October 22, 2021, Father and Mother had an arrangement whereby S.M. and A.M. would live with Father for one week and live with Mother the next week.

For about five days leading up to October 22, 2021, S.M. and A.M. had been living with Father at the paternal grandmother's house. That morning, Father drove with S.M. and A.M. to Mother's apartment to pick up Mother and take her to a doctor's appointment. At the apartment, Father and Mother argued about Father's possession of Mother's car keys, which led to a physical altercation.

---

[1] Subsequent unspecified statutory references are to the Welfare and Institutions Code.

According to Mother, as she attempted to take the car keys from Father, Father grabbed her by the neck and choked her to the point where she had difficulty breathing. Father then pushed Mother against a wall and threw her to the floor, causing her to hit her head. J.T. jumped on Father, and Father threw J.T. to the floor. J.T. then ran out of the apartment and returned with a security guard. At some point during the fight, Mother bit Father's hand.

According to Father, Mother had accused him "of cheating," and started an argument about the car keys. Mother got angry and either knocked a cup of coffee out of his hands (according to a police report) or threw a pot of hot water at him (as Father told a social worker). When Father picked up S.M. to protect her from getting coffee spilled on her, Mother tried to wrestle the child from him. She also tried to take Father's cell phone from his hand. During the struggle, Mother bit Father on his hand, resulting in a visible injury. Father denied pushing Mother to the floor, grabbing Mother's neck, or choking her. He also denied that J.T. intervened and denied that he threw the boy to the ground.

According to J.T., Father started to strangle Mother. J.T. jumped on Father to get him to stop. Father shoved Mother, causing her to fall to the ground. Mother then told J.T. to get help. When he returned with a security guard, Father was trying to take one of the children away.

According to the security guard who responded to J.T.'s request for help, upon arrival at the scene she observed Father and Mother struggling over the possession of a baby. When she and a neighbor intervened, Father let go of the baby. She also saw Mother trying to take a cell phone from Father. The security guard did not, however, see Father hit Mother or Mother bite Father.

Law enforcement officers responded to the scene and interviewed Father, Mother, and others. They observed redness and scratches on Mother's neck, and a "slight bump/swelling" on her forehead. Father had a small cut on a finger. The officers determined that Father "was the dominant aggressor," and arrested him on suspicion of committing corporal injury on a cohabitant. (Pen. Code, § 273.5, subd. (a).)

A report generated from the California Law Enforcement Telecommunications System (CLETS) revealed that Mother had been convicted in 2006 of prostitution and in 2020 for "reckless driving," each described as a misdemeanor. CLETS showed that Father had been arrested in 2017 on charges of inflicting corporal injury on a spouse/cohabitant, and convicted shortly afterward on an unspecified misdemeanor count. Father's 2017 conviction occurred before the children were born, and the identity of the victim is not apparent from our record.

During an interview with a social worker about a week after the altercation, Mother denied that there was an ongoing issue between her and Father; although they argued "at times," there was "nothing over the top." The social worker also spoke with J.T., who denied any ongoing violence in the home or prior incidents involving Mother and Father.

### B.    Jurisdiction and Disposition

On December 8, 2021, DCFS filed a petition under section 300, subdivisions (a) and (b)(1), requesting that the children be declared dependents of the juvenile court. On December 13, 2021, the court detained the children from the parents and placed them in the custody of DCFS, but released them to Mother's home under DCFS supervision. The court ordered monitored visits for Father.

4

In January 2022, during a discussion with a social worker about Father's and Mother's discipline methods, J.T. said that Father "would hit him in his chest." J.T. pointed to his chest and said, " 'He would hit me where I have my asthma.' " He could not, however, give the social worker an approximate date when Father had hit him. In a subsequent meeting with the social worker, J.T. explained that the only time Father hit him in the chest was during the October 2021 altercation, when Father hit him and threw him to the ground.

Father denied hitting J.T. in the chest. Mother told a social worker that she had never seen Father hit J.T. as a form of discipline, but expressed concern about his "rough play" with the child.

On February 3, 2022, DCFS filed an amended petition, which it further amended on March 16, 2022. In the operative amended petition, DCFS averred in count a-2 that Father hit J.T. in the chest and, during the October 2021 altercation, Father "threw the child to the ground" after J.T. jumped on Father's back.[2] J.T. "was scared and did not want . . . Father to hurt . . . Mother." DCFS alleged that Father's "violent conduct" "endangers the children's physical health and safety, and places the children at risk of serious physical harm, damage and danger."

DCFS further alleged, under section 300, subdivision (b)(1), that the children have suffered, or there is a substantial risk that they will suffer, serious physical harm or illness as a result of either (1) the failure or inability of the parents to supervise or protect the children, or (2) the willful or negligent failure of the parents to supervise or protect the children from the conduct of the children's

---

[2] An allegation previously alleged as allegation a-1 was dismissed in the amended petition.

5

custodian.  Under count b-1, DCFS alleged that Father and Mother "have a history of engaging in physical altercations in the presence of the children," and that during the October 2021 altercation, Father choked Mother causing injuries to her neck, pushed her against a wall, and threw her to the floor causing injuries to her head.  During the same altercation, Mother bit Father's hand causing an injury, "smacked a cup of coffee out of . . . [F]ather's hand," and the parents struggled over one of the children and a cell phone.  In addition, Father "has a criminal conviction for inflicting corporal injury to a spouse/cohabitant," and had previously threatened Mother with a gun.  (Capitalization omitted.) Mother also allows Father to reside in the children's home and to have unlimited access to the children.  Father's physical conduct against Mother and Mother's "failure to protect the children, endangers the children's physical health and safety, and places the children at risk of serious physical harm, and failure to protect."

Under count b-2, DCFS repeated the facts alleged in count a-1:  Father hit J.T. in the chest and, during the October 2021 incident, threw J.T. to the ground.  Such "violent conduct," DCFS alleged, "endangers the children's physical health and safety, and places the children at risk of serious physical harm, and failure to protect."

On February 4, 2022, the court granted Mother's application for a temporary restraining order protecting her and the children from Father.  The court set a hearing on a permanent restraining order.

6

On March 16, 2022, the court held a jurisdiction and disposition hearing at which the court admitted the social worker's reports into evidence without objection. Mother pleaded no contest to count b-1—the only count based in part on her conduct, and submitted on DCFS's recommendation that the children be removed from Father's custody and remain in her care.

Unlike Mother, Father denied the allegations and argued that sufficient evidence did not support the petition, requiring its dismissal. He further argued that, if the court sustained the petition, it should nonetheless release the children to the parents because there was insufficient evidence to support a finding that the children would be at risk if released to Father.

The court sustained each of the allegations and declared the children dependents of the court. The court further ordered the children be removed from Father "because there is a substantial danger to the physical health, safety, protection, or physical or emotional well-being" of the children. The court ordered the children placed with Mother under DCFS supervision. It adopted DCFS's case plan for Father, which included participation in domestic violence and anger management programs and individual counseling, and required that he take random or on-demand drug tests. The court granted Father monitored visits with the children.

Immediately following the jurisdiction and disposition hearing, the court heard Mother's application for a restraining order against Father. The application sought to restrain Father from contacting or coming within 100 yards of the children, as well as Mother and J.T., except during Father's monitored visits. Over Father's objection, the court granted the application.

7

Father timely appealed from the orders made on March 16, 2022.  This court assigned case No. B319168 to the appeal.

## C.     Six-Month Review Hearing

In a report prepared for the six-month review hearing, DCFS reported that the children are living with Mother, who "continues to meet the needs of the children for food, shelter, care, and supervision."  Father "has maintained a consistent relationship with [the] children," and the children enjoy their three-hour, twice per week visits with Father, who never missed a visit.  A social worker monitoring the visits described him as "very attentive and loving to the children," and described the "quality of visits . . . [as] great."

In April 2022, a social worker assessed Father's home and found it "neat and clean," with "ample amounts of food, running water, and a play area in the apartment complex," and devoid of safety hazards.  After the assessment, the children' visits with Father were "liberalized from monitored to unmonitored."

Father was in compliance with his case plan, and was participating in the programs and counseling called for under his case plan.  He tested positive for marijuana on seven occasions, tested negative on two occasions, and was a "no show" on one occasion.

In August 2022, Father informed a social worker that he and Mother were exchanging text messages "about having intercourse with one another and trying to work on getting the family back together."  When the social worker asked Mother about the texts, Mother said that she has no intention of reuniting with Father and explained that she used the sexual banter in the texts "to get [Father] to feel comfortable enough to admit that he was telling people that she was a murderer and prostitute."

8

The social worker opined that although the children appear to be safe in the care of both Mother and Father, "the parents do not appear able to maintain civil conversations," and their conversations "could lead to another physical altercation."

According to the social worker, Father continues to develop his relationship with his children in a healthy and positive manner by taking responsibility for his actions, actively participating in services, and reported gaining new tools to help manage and regulate his emotions, by being more vocal about how he feels as well as learning how not to feed into others' actions. Nevertheless, the social worker determined that the risk level for this family is "HIGH," and recommended the court continue services.

On September 14, 2022, the court held a six-month review hearing. Mother requested that the court terminate its jurisdiction, and Father objected "to prior orders the court made at jurisdiction."

The court determined that continued jurisdiction is necessary and appropriate.

Father timely appealed from the orders made at the six-month review hearing. This court assigned case No. B323847 to the appeal and granted Father's motion to consolidate the appeals in case Nos. B319168 and B323847 for purposes of briefing, argument, and decision.

## DISCUSSION

### A.    Jurisdictional Findings

Father contends that the court's jurisdictional findings are not supported by substantial evidence.

Initially, we note that the juvenile court's jurisdiction was based in part on a true finding as to count b-1 based on Mother's no contest plea to that count. Mother has not challenged that finding, and therefore we do not review it. Notwithstanding the

9

existence of jurisdiction based on the unchallenged finding as to Mother's conduct, we exercise our discretion to reach the merits of Father's challenge to the jurisdictional findings against him because the findings serve as the basis for a dispositional order and the restraining order Father challenges on appeal. (See *In re J.N.* (2021) 62 Cal.App.5th 767, 774.)

In reviewing a challenge to the sufficiency of the evidence to support a jurisdictional finding, we review the record in the light most favorable to the judgment, drawing all reasonable inferences in support of the findings. (*In re A.M.* (2010) 187 Cal.App.4th 1380, 1388; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 450–451.) "We do not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.) Substantial evidence, however, " 'is not synonymous with any evidence. [Citation.] To be substantial, the evidence must be of ponderable legal significance and must be reasonable in nature, credible, and of solid value.' " (*In re Cole L.* (2021) 70 Cal.App.5th 591, 602.)

### 1. *Counts a-2 and b-2*

A juvenile court may assert jurisdiction under section 300, subdivision (a) if the "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian."

Under subdivision (b)(1) of section 300, the court may assert jurisdiction if a "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of" "[t]he failure or inability of the child's parent or guardian to adequately supervise or protect the child"; or "[t]he willful or negligent failure of the child's parent or guardian to adequately

10

supervise or protect the child from the conduct of the custodian with whom the child has been left."

Count a-2 (arising under section 300, subdivision (a)) and count b-2 (arising upon section 300, subdivision (b)) are based on the same factual allegations:  Father hit J.T. in the chest and, during the October 2021 incident, Father threw J.T. to the ground. The juvenile court sustained both counts.

Although a social worker reported that J.T. initially told the social worker that Father "would hit him in his chest," suggesting that Father had hit J.T. on more than one occasion, J.T. later clarified that the only time Father hit him was during the October 2021 incident, after J.T. jumped on Father.  There is thus no substantial evidence that Father hit J.T. other than during the October 2021 incident.  On appeal, DCFS does not assert otherwise.

There is no evidence that J.T. or either of the younger children suffered any physical harm or illness as a result of the October 2021 incident.  Thus, the issue under section 300 subdivision (a) and (b)(1) in this case is whether there is substantial evidence to support the findings that there was a "substantial risk" that the children "will suffer" physical harm as a result of Father nonaccidentally inflicting serious physical harm upon them (§ 300, subd. (a)), or physical harm or illness as a result of the parents' failure to supervise or protect the children (§ 300, subd. (b)(1)).

"In order to sustain a petition under section 300, a significant risk to the child must exist ' "at the time of the jurisdiction hearing." ' " (*In re J.N.*, *supra*, 62 Cal.App.5th at p. 775.)  Although past conduct may be probative of current conditions, " 'there "must be some reason beyond mere speculation to believe the alleged conduct will recur." ' " (*In re Cole L.*, *supra*, 70 Cal.App.5th at p. 602; see *In re Rocco M.* (1991) 1 Cal.App.4th 814, 824; *In re S.F.* (2023) 91 Cal.App.5th 696, 712–713.)

11

DCFS points to the October 2021 incident and argues that "[a]ny time a grown man and a seven[-]year[-]old boy get into a physical confrontation, the boy will be at substantial risk of harm."[3] Mother's and J.T.'s statements to law enforcement and social workers are evidence that J.T. jumped on Father in an attempt to stop Father from harming Mother, and Father responded by hitting J.T. in the chest or throwing him to the ground. Although Father's actions created a substantial risk of physical harm to J.T. *during that incident*, such evidence is insufficient to establish a substantial risk of harm to J.T. or the other children in the future. There is no other substantial evidence to infer such a risk. J.T., as well as Mother and Father, denied that Father ever physically disciplined J.T. and they agreed that the parents have no ongoing domestic violence issues. The evidence, therefore, is insufficient to support the court's true finding as to counts a-2 and b-2.

### 2. *Count b-1*

DCFS supported count b-1 with additional facts concerning the October 2021 incident, including that Father choked Mother, "pushed [her] against a wall," and "threw [her] to the floor." As a result, Mother had difficulty breathing and suffered scratches to her neck and swelling on her head. In addition, the parents "struggled over [a] child" and "struggled over a cell[ ]phone." These allegations are supported by Mother's and J.T.'s statements to law enforcement and social workers, summarized above.

---

[3] DCFS refers to J.T. as a seven-year-old boy at the time of the October 2021 incident. Our record, however, indicates that he was eight years old at the time.

For the reasons discussed above regarding counts a-2 and b-2, the evidence of the October 2021 incident is insufficient to support the b-1 allegation; no child suffered serious physical harm or an illness during the altercation and there is no evidence of ongoing domestic violence or other conduct since the incident that could support a finding of substantial risk of harm to the children.

In addition to the October 2021 incident, DCFS further alleged that Father "threatened . . . [M]other with a gun"; the two "engaged in a physical altercation" in 2019; and Father has a criminal conviction for inflicting corporal injury to a spouse/cohabitant. On appeal, DCFS does not rely on these facts to support the court's findings. We have, however, reviewed the record and conclude that the evidence related to these allegations is insufficient to support the court's jurisdictional finding.

The only evidence of Father's alleged threating Mother with a gun is the following statement in the social worker's detention report: "[M]other stated she has concerns as to [F]ather having a weapon at his home because [F]ather threaten[ed] her with one. Mother denied knowing for sure as to the weapon, but [M]other stated she thinks it is a 'BB gun.' " In the jurisdiction/disposition report, the social worker noted that Mother "did not see the gun." It does not appear from our record that anyone investigated the threat—other than to ask Father, who denied making it— or the possible existence of a gun or other weapon. The social worker's reports do not indicate what Father said in making the threat, when he said it, who was present when Father made the threat, or why Mother "thinks" the weapon was a BB gun. Nor is there any reason to believe that the threat, if Father made it, involved or endangered the children in any way or placed them at risk of suffering serious physical harm or illness. The vague report of Mother's statement does not, therefore, constitute

13

substantial evidence to support jurisdiction under section 300, subdivision (b)(1).

The allegation of a "physical altercation" between Father and Mother in 2019 is presented without factual support and unexplained by DCFS at the jurisdictional hearing and on appeal. Our record does refer to two referrals to DCFS regarding incidents involving Father in 2019, but DCFS disposed of each as inconclusive or unfounded. They are insufficient to support the challenged jurisdictional finding.

Lastly, the allegation that Father "has a criminal conviction for inflicting corporal injury to a spouse/cohabitant" (capitalization omitted), is based on the social worker's summary of a CLETS report concerning Father. The social worker's report states: "4/27/17—arr/det/cited for PC inflict corporal inj on spouse/cohab, 5/1/17—court action—misd. conviction; sen: 36 months probation, 9 days jail." The cryptic notation suggests that five years before the jurisdictional hearing Father was arrested on a charge of inflicting corporal injury on a spouse or cohabitant, that he was convicted four days later (presumably by plea) of an unspecified misdemeanor, and, after serving nine days in jail, given three years of probation. Neither the social worker's summary of the CLETS report nor anything else in our record is evidence concerning the nature or circumstances of the crime of which Father was convicted, and DCFS offers no explanation as to how the conviction places the children at risk of harm.

For all the foregoing reasons, we agree with Father that the jurisdictional findings arising from his alleged conduct must be vacated.

14

## B.    Order Removing Children From Father's Custody

Father challenges the court's dispositional order removing the children from his physical custody.

A juvenile court may not remove a dependent child from physical custody of his or her parent "with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence" of, as is relevant here, "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . custody."  (§ 361, subd. (c)(1).)

For the same reasons that the evidence is insufficient to support the jurisdictional findings that Father's conduct placed the children at substantial risk of harm or illness, the evidence is insufficient to support the finding that allowing Father to have physical custody of the children would place them in "substantial danger" of their "physical health, safety, protection, or physical or emotional well-being."  (§ 361, subd. (c)(1).)  The order removing the children from Father, therefore, must also be vacated.

Because Father challenges only the court's dispositional order removing the children from his custody, we do not address any other dispositional orders, such as requiring his compliance with his case plan.  (See *In re Briana V.* (2015) 236 Cal.App.4th 297, 311 [when the court has jurisdiction over children based on conduct of one parent, the court may enter binding dispositional orders on the other, nonoffending parent]; *In re I.A.* (2011) 201 Cal.App.4th 1484, 1492 [same].)

15

## C.     Restraining Order Protecting Children

Father argues that the court erred when it granted
Mother's request for a restraining order to the extent that it
restrains Father from contacting or coming within 100 yards
of the children.  Because there is no substantial evidence to support
the jurisdictional allegations against Father or the order removing
the children from his custody, we agree with Father that the
restraining order must be vacated to the extent it applies to the
children.[4]

---

[4] We note that our decision is based on the record at the time
of Father's appeal.  (See *In re Zeth S.* (2003) 31 Cal.4th 396, 405
[we review " 'the correctness of a judgment as of the time of its
rendition, upon a record of matters which were before the trial court
for its consideration' "].)  We realize that while this case has been
pending on appeal other issues may have been presented to the
juvenile court.  Our opinion and disposition do not preclude further
action by the juvenile court based on events that occurred after
those set forth in the record on appeal.

## DISPOSITION

The court's true findings as to counts a-2 and b-2 of the second amended petition filed on March 16, 2022 are vacated. The court's true finding as to count b-1 is vacated to the extent that it is based on Father's conduct.

The court's March 16, 2022 dispositional order removing the children from Father's custody is vacated.

The restraining order entered on March 16, 2022 against Father is vacated to the extent that it restrains Father from contacting the children.

The orders from which Father has appealed are otherwise affirmed.

NOT TO BE PUBLISHED.


                                        ROTHSCHILD, P. J.

We concur:



                    CHANEY, J.



                    BENDIX, J.



17